**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HENRY MULLER**                                           **CIVIL ACTION**

**VERSUS**                                                      **NO.  09-3362**

**ST. TAMMANY PARISH, ET AL**                   **SECTION "N"(4)**

## REPORT AND RECOMMENDATION

Before the Court are five motions: (1) **Rule 12(b)(6) Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement Pursuant to FRCP Rule 12(e) (Rec. Doc. No. 13)** filed by the St. Tammany Parish School Board; (2) **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 19)** filed by St. Tammany Parish; (3) **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 20)** filed by St. Tammany Parish District Attorney Walter Reed; (4) **Motion to Dismiss (Rec. Doc. No. 30)** filed by Jason Mire, Keith Schenck, Mark Oster, and the St. Tammany Parish Sheriff's Office; and (5) **Motion to Dismiss (Rec. Doc. No. 35)** filed by James Scott Winther (Sr.), Shannon Michelle Winther, and James Scott Winther, Jr.  The plaintiff, Henry Muller, has filed oppositions to the first three of the listed motions.[1]

The motions, along with the entire matter, were referred to the Magistrate Judge for the handling of pre-trial matters, including an evidentiary hearing if necessary and submission of

---

[1]Rec. Doc. Nos. 18 and 29.

findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).[2]  Upon review of the entire record, the Court has determined that this motion can be disposed of without an evidentiary hearing.

## I.     Factual Background

### A.     The Complaint

The plaintiff, Henry Muller ("Muller"), filed this civil rights action against the defendants, St. Tammany Parish, the St. Tammany Parish Sheriff's Office, the St. Tammany Parish School Board, St. Tammany Parish District Attorney Walter Reed, Northshore High School, Jason M. Mire, Keith J. Schenck, Mark Oster, James Scott Winther (Sr.), James Scott Winther Jr., and Shannon Michelle Winther a/k/a Shannon Sneed a/k/a Shannon Corrales a/k/a Shawn Corrales, seeking damages under state and federal law for the alleged violation of his constitutional rights, including his right to practice his religion, violation of due process, and illegal search and seizure.

Muller, under a broad reading, alleges that Northshore High School allowed its students, staff and representatives, to trespass on property owned by the church where Muller is a member and trustee.  He alleges that the Winthers (James Sr., James Jr., and Shannon) falsified documents and statements to the St. Tammany Parish Sheriff's Office.  He claims that they also intimidated a witness, and tried to kill him, or commit great bodily harm, with their pickup truck on more than one occasion in March of 2009.

He further alleges that defendants Mire, Schenck, and Oster, assisted in the falsification of documents, affidavits, and police reports.  He also claims that these defendants illegally searched

---

[2]Rec. Doc. No. 5.

his car and residence, and they took photographs and video of themselves doing this while in uniform.

Muller also claims that the St. Tammany Parish Sheriff's Office and District Attorney Walter Reed were aware of the foregoing and failed to take action. He further alleges that "the defendants have repeatedly harassed, threatened, blacklisted and terrorized the plaintiff at his residence and place of worship." He claims that they have caused him emotional distress and have invaded his privacy. Muller alleges that the defendants, acting under "color of law," trespassed on church property, interfered with his right to practice his religion on church property, broke the law, committed illegal acts in violation of due process, and conducted an illegal search and seizure without due process. As relief from the foregoing claims, Muller seeks $10 million in compensatory damages, court costs, and attorneys' fees.

### B.    State Criminal Proceedings

Based on the facts presented by the plaintiff in his complaint, and references made in his subsequent pleadings, the Court's research reveals that Muller was convicted by a jury in the 22nd Judicial District Court for St. Tammany Parish on the charge of false impersonation of a peace officer in violation of La. Rev. Stat. Ann. § 14:112.1. The facts of the case were summarized by the Louisiana First Circuit Court of Appeal as follows:

> In April 2008, a group of teenage boys playing football on a field next to the Pearl Acres Baptist Church in Slidell was approached on several occasions by defendant. Each time, defendant informed the boys that he was a police officer and that they were trespassing and needed to leave. Defendant was not a police officer, although at one time, he was a private detective and carried a private detective badge.
> Detective Jason Mire, with the St. Tammany Parish Sheriff's Office, took the complaint about defendant from James Winther, one of the football players, and his mother, who was a police officer with the Mandeville Police Department. Based on the information, Detective Mire obtained an arrest warrant. Detective Mire and Deputy Mark Oster, also with the St. Tammany Parish Sheriff's Office, went to

defendant's house in Lake Village Subdivision. A black Ford Crown Victoria Police Interceptor was in the driveway. The vehicle had dark tinted windows, four antennas on the trunk, a spotlight, push bumpers, a siren, a white strobe light in the center of the dashboard, a video camera, and a radar detector. Deputy Oster retrieved a loaded 9mm handgun from defendant's vehicle. Deputy Oster also found two private detective badges in the vehicle.

Winther, who was a seventeen-year-old Northshore High School football player, testified at trial that he and his friends played football on the field next to the Pearl Acres Baptist Church. He and his friends were given permission to play on the field by the church pastor, Pastor Bob.[3] They played football on Sundays. In describing the first incident, Winther stated that defendant drove up in his Crown Victoria. Winther's friends thought defendant was a police officer and that they were in trouble. Defendant told the boys that they were trespassing and they were all under arrest. Winther told defendant that he (defendant) was not a cop. Defendant said that he was. Winther informed defendant that he did not have a public license plate, and asked defendant for some identification. Defendant flashed a badge. However, it was done so quickly that Winther could not read the lettering on the badge. Winther then asked defendant for his police commission. Defendant quickly showed him a card. Winther told defendant that it was not a commission because there was no picture on the card. Winther also told defendant they had permission from Pastor Bob to be on the field. Defendant told the boys to be out by 5:00, and he then left. According to Winther, defendant approached them on two other occasions and demanded they leave or else they would be arrested.

James Johnson, another high school football player who played football with Winther and their friends on the church field, testified that on the first occasion, defendant drove up, remained in his car, and told the boys to leave. The second time, defendant got out of his car and approached the group. Defendant told them that he had previously told them to leave and that they could not come back. Winther asked defendant who he was. Defendant said he was an officer. Winther told defendant he was not an officer and that he wanted to see identification. Defendant "pulled out a badge and threw it in James's face." Winther and defendant began arguing. Johnson further testified that defendant approached them a third time when they had an adult (a parent of one of the teenagers) with them. According to Johnson, after the third incident with defendant, the group of boys stopped playing at the church field because the church acquired a new pastor, who did not want them playing there.

Adonis Young, another high school football player who played on the church field with Winther and their friends, testified at trial that on one occasion when he was playing football, defendant approached them and told them they were trespassing. Young saw defendant's vehicle, which was "pitch black" and had the "darkest windows" he had ever seen. Young also saw a light inside of the vehicle.

---

[3]"FN1. In April of 2008, Pastor Bob left the church and was replaced by Pastor Bill Fiddle. According to the trial testimony of Barbara Muller, defendant's wife and Pearl Acres Baptist Church clerk, Mrs. Muller did not know who Pastor Bob spoke with regarding permission to play on the field."

Based on this observation, Young believed that defendant was a police officer. Winther told defendant he was not a cop, but defendant said he was. When Winther started asking questions, defendant flashed "this badge in his face, saying, [l]ook at this." According to Young, defendant came by the field about three times when they were playing football.

Barbara Muller, defendant's wife, testified at trial that she was the clerk for Pearl Acres Baptist Church. Defendant was a trustee and the assistant treasurer for the church. At one point, both she and defendant were private investigators. In 2007, upon the death of their sponsor, their private investigator licenses became inactive. However, defendant began working for someone else, and his license was reactivated until November 15, 2008, when it expired. On Wednesday, April 16, 2008, Mrs. Muller was with defendant when he drove the Crown Victoria to church to attend services. They saw the boys playing football on the field. Defendant approached the boys. He told them that services were about to begin and that they needed to leave. She did not hear defendant tell them he was a police officer or that he would arrest them.

*State v. Muller*, No. 2009-KA-1732, 2010 WL 1170225, at *1-2 (La. Ct. App. Mar. 26, 2010) (footnote in original).

Muller was sentenced by the Trial Court to serve two years in prison at hard labor, with one year suspended in favor of supervised probation, with conditions, for five years after his release. His conviction and sentence were affirmed by the Louisiana First Circuit on March 26, 2010. *Id.*, at *1.

## II.    Standards of Review

### A.    Review for Frivolousness

The very statute allowing plaintiff to proceed as a pauper also requires the Court to screen a pauper-plaintiff's complaint and dismiss it without service of process at any time when the Court makes a determination that the complaint is frivolous. Section 1915(e)(2)(B) of Title 28 of the United States Code reads in pertinent part as follows:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . .
(B) the action or appeal-

       (I) is frivolous or malicious;
       (ii) fails to state a claim on which relief may be granted; or
       (iii) seeks monetary relief against a defendant who is immune from such relief.

In cases in which a plaintiff seeks to proceed without the prepayment of the required filing fee and attendant fees for service of process, courts have long had the authority to dismiss *in forma pauperis* complaints if satisfied that the claims asserted are frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B) (2006); *see also*, former 28 U.S.C. § 1915(d).[4]

Section 1915(e)(2)(B) applies equally to prisoner and non-prisoner *in forma pauperis* cases. *James v. Richardson*, 344 F. App'x 982, (5th Cir. 2009) ("Section 1915(e)(2)(B) requires dismissal of frivolous IFP actions even if those actions are brought by non-prisoner plaintiffs.") (citing *Newsome v. EEOC*, 301 F.3d 227, 231-33 (5th Cir. 2002) (affirming dismissal of non-prisoner claims for frivolity and failure to state a claim under § 1915(e)(2)(B)(I) and (ii))).

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176

---

[4]Section § 1915(d) was superseded by 28 U.S.C. § 1915(e)(2)(B) as a part of the Prison Litigation Reform Act of 1996 ("PLRA").

(5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

### B.    Review of Motion Under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The United States Supreme Court has held that Fed. R. Civ. P. 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court went on in *Ashcroft* to clarify:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557, 127 S.Ct. 1955.

*Id*. (quoting *Bell Atlantic Corp*., 550 U.S. at 555).

Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp.*, 550 U.S. at 555-56 (quotation marks, citations, and footnote omitted) (uppercase and parenthetical in original). Thus, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (recognizing a change in the standard of review). Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atlantic Corp.*, 550 U.S. at 556. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*.

(quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)). "But, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." *Ashcroft*, 129 S. Ct. at 1950.

In resolving a Rule 12(b)(6) motion, the court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pa. Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing pro se complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972).

## III.  Review for Frivolousness

Muller seeks relief in this case for the alleged violation of his federal constitutional rights as a result of the actions of the defendants. Section 1983 imposes liability on any person who

violates someone's constitutional rights while acting under color of state law.  42 U.S.C. § 1983 (2006); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).  Under § 1983, the plaintiff must prove that a constitutional violation occurred, and that the actions were taken by a "person" under color of state law.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).  Muller is proceeding herein as a pauper and his complaint must first be screened for frivolousness under § 1915(e).  In doing so, the Court finds that the following defendants and claims are not proper in this § 1983 action and must be dismissed as frivolous.

## A.    Improper Defendants

In this case, Muller has named several defendants who are not proper defendants under § 1983 for the reasons that follow.

### 1.    St. Tammany Parish Sheriff's Office

Muller has named the St. Tammany Parish Sheriff's Office as a defendant.  In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether the St. Tammany Parish Sheriff's Office can be sued.[5]  Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person."  This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code art. 24 (2009).

The State of Louisiana, however, grants no such legal status to any parish sheriff's office. *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. Ct. App. 1977), *writ refused*, 352 So. 2d 235 (La. 1977).  Thus, none of the parish sheriff's offices are legal entities capable of suing or being sued.  *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988).

---

[5]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  *See* Fed. R. Civ. P. 17(b).

Accordingly, the St. Tammany Parish Sheriff's Office is not a juridical person capable of being sued under § 1983 or state law. The claims, if any, brought against the St. Tammany Sheriff's Office under § 1983 and state law are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e).

Having resolved that the St. Tammany Parish Sheriff's Office and any § 1983 claims against it should be dismissed as frivolous, the Motion to Dismiss (Rec. Doc. No. 30) filed by defendants Mire, Schenck, Oster, and the St. Tammany Parish Sheriff's Office should be denied or dismissed as moot as to this defendant.

### 2. Northshore High School

Muller has named Northshore High School as a defendant in this case because the students he found using church property attended that school. Considering Fed. R. Civ. P. 17(b) and Louisiana law, including La. Civ. Code art. 24, Northshore High School is not a "juridical person" with the capacity to sue or be sued under Louisiana law. Although Louisiana courts have not yet ruled on the precise issue of whether a high school is a juridical person that can sue or be sued, the Louisiana Supreme Court in *Roberts v. Sewerage & Water Board of New Orleans*, 634 So. 2d 341 (La. 1994), set forth a framework within which to determine an entity's juridical status. The Court in *Roberts* stated:

> [t]he important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity. 1 Sands & Libonati, § 2.18 and authorities cited therein, §§ 2.19, 2.20. Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.

*Roberts,* 634 So. 2d at 346-47. In concluding that the Sewerage and Water Board was capable of being sued, the *Roberts* Court focused its analysis on the independent management, financing and operations of the Board. *See id.* at 352.

By contrast, in *City Council of Lafayette v. Bowen*, 649 So. 2d 611, 616 (La. Ct. App. 1994), *writ denied*, 650 So. 2d 244 (La. 1995), the Louisiana Third Circuit Court of Appeals held that under the *Roberts* analysis, the City Council of Lafayette had no capacity to sue or be sued. In so holding, the Court expressly found "no authority, constitutional, statutory, or via home rule charter" that authorized the Lafayette City Council to institute a law suits on its own motion. *Bowen*, 649 So. 2d at 613.

In this case, the state law charges the various school boards the authority to create, schools, employ teachers, maintain and purchase school buildings and land, and with the duty for physical maintenance. *See* La. Rev. Stat. Ann. §§ 17:51, 81 *et seq.*, § 151 *et seq.* (2001). Under the *Roberts* framework, Northshore High School is not "legally empowered to do" anything independently of the St. Tammany Parish School Board. *Accord Roberts*, 634 So. 2d at 347; *but see Sanders v. La. High Sch. Athletic Ass'n.*, 242 So. 2d 19 (La. Ct. App. 1970) (rejecting argument that Ville Platte High School was without capacity to sue or to be sued where no objection was raised and Louisiana High School Athletic Association treated the high schools as separate legal entities).[6] The school is not a separate entity, but merely a facility created by the Board.

Furthermore, under federal law, the Court finds no law, constitutional, statutory, or otherwise, that defines a school to be a person with the capacity to sue or to be sued within the meaning of Fed. R. Civ. P. 17. *Ximines v. George Wingate High Sch.*, 516 F.3d 156 (2d Cir. 2008)

---

[6]The Court finds *Sanders* distinguishable from the instant case. In *Sanders*, the parties did not challenge the high school's standing as they have done here in the motion to dismiss filed by the St. Tammany Parish School Board.

(finding defendant high school was not suable entity); *Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560 (N.D. Cal. 1993) (granting motion to dismiss high school because it was not a suable entity).

For the foregoing reasons, the claims against Northshore High School are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e).

Having resolved that Northshore High School and any § 1983 claims against it should be dismissed as frivolous, the Rule 12(b)(6) Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement Pursuant to FRCP 12(e) (Rec. Doc. No. 13), should be denied or dismissed as moot as to this defendant.

### 3. James Scott Winther (Sr.), Shannon Michelle Winther, and James Scott Winther, Jr.

Under a broad reading, Muller has named the Winthers as defendants under § 1983 for allegedly falsifying documents and statements made to the St. Tammany Parish Sheriff's Office. As the complainants in his criminal proceedings, the Winthers are not state actors and therefore can not be held liable under § 1983.

As mentioned above, in order for Muller to prove § 1983 liability, he must establish that the defendant is acting under color of state law. *Flagg Bros., Inc.*, 436 U.S. at 156. The fact that the Winthers lodged a complaint to the police does not make them state actors. *See Manax v. McNamara*, 842 F.2d 808, 813 (5th Cir. 1988) ("Providing information to the state and pressing for state action against an individual, without more, cannot suffice to make a private entity liable under section 1983 as a state actor.") Without state action, there is no liability under § 1983.

A private person or non-state actor may also be liable under § 1983 if there is some proof of an overt joint action taken with the State or one of its agents, to violate his constitutional rights. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Pete v. Metcalf*, 8 F.3d 214, 216-17 (5th Cir. 1993);

*Hobbs v. Hawkins*, 968 F.2d 471, 480 (5th Cir. 1992). In this case, Muller has made broad allegations that Deputies Mire, Schenck, and Oster, "assisted in the falsification of said documents and statements."[7] Muller does not allege that these defendants acted in conspiracy.

Even if he had referenced the word conspiracy, however, the allegation of a conspiracy between private and state actors requires more than conclusory statements. *See Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (holding that "mere conclusory allegations of conspiracy cannot, absent reference to material facts" state a claim of conspiracy)). The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act, and (2) a deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994). "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004). Muller provides no factual basis from which this Court can glean an allegation of conspiracy sufficient to render the Winthers to be state actors. *See Brinkmann*, 793 F.2d at 113; *Arsenaux*, 726 F.2d at 1024.

His complaint also does not indicate that any action was taken by Mr. and Mrs. Winther in their capacities as city police officers. The conclusory complaint contains no statement of alleged influence or action taken in any capacity as officers. *Accord*, *Hey v. Irving*, 161 F.3d 7 (5th Cir. 1998) (complaint contained no factual support for conclusory allegations that judge used his position to influence police in non-judicial matter, therefore complaint failed to allege conspiracy with state officials).

---

[7]Rec. Doc. No. 1, p. 2.

Muller's conclusory allegations are insufficient to establish that the Winthers acted in concert with a state actor to violate his constitutional rights. In reviewing the complaint, this court does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Muller's complaint fails to establish the Winthers to be state actors subject to liability under § 1983. His § 1983 claims against James Scott Winther (Sr.), Shannon Michelle Winther, and James Scott Winther, Jr., are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e).

Having resolved that the Winthers and any § 1983 claims against each of them should be dismissed as frivolous, the Motion to Dismiss (Rec. Doc. No. 35) filed by defendants James Scott Winther (Sr.), Shannon Michelle Winther, and James Scott Winther, Jr., should be denied or dismissed as moot.

### 4.     District Attorney Walter Reed

Muller alleges that Reed was made aware of the alleged actions by the Winthers and failed to investigate them or take action against them. The Court notes that Muller has not designated whether he intended his claims to be against Reed in his individual or official capacity. In either capacity, the claims are frivolous.

The Supreme Court has recognized that there are some officials whose duties require a full exemption from liability. Such officials include prosecutors in the performance of their official functions. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Yaselli v. Goff*, 275 U.S. 503 (1927). In order to determine whether a government official is absolutely immune from suit, the proper focus should not be the identity of the party claiming the immunity, but rather, his "role in the context of the case." *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996). In other words, immunity attaches

to particular official functions, not to particular offices.  *Forrester v. White*, 484 U.S. 219, 229 (1988); *see also O'Neal v. Miss. Bd. of Nursery*, 113 F.3d 62 (5th Cir. 1997).

In the context of absolute prosecutorial immunity, immunity from suit extends to those acts "intimately associated with the judicial phase of the criminal process" which includes the presentation of the State's case, evaluating evidence, and interviewing witnesses in preparation for trial.  *Burns v. Reed*, 500 U.S. 478, 492 (1991).  Also, among the traditional functions of a prosecutor is the duty to decide which charges to bring and whether to pursue a conviction in court. *See Kalina v. Fletcher*, 522 U.S. 118, 125 (1997).

Muller's claims against Reed as District Attorney address and invoke alleged actions, or inactions, taken within his authority as prosecutor, specifically his decision to pursue complaints against the Winthers.  The District Attorney is clearly entitled to absolute immunity from suit for his discretionary role in determining what complaints to investigate and what charges to pursue.  The claims against Reed in his individual capacity must be dismissed as frivolous, for failure to state a claim for which relief can be granted, and for seeking relief against an immune defendant pursuant to § 1915(e)(2).

Furthermore, suit against a prosecutor named in his official capacity is suit against the entity he represents; in this case, that is the Parish of St. Tammany.  *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999);[8] *see also Kentucky v. Graham*, 473 U.S. 473 U.S. 159, 165 (1985). The District Attorney, as a representative of St. Tammany Parish, could be liable under § 1983 only if his actions were in execution of an unconstitutional parish policy or custom which inflicted injury

---

[8]In *Burge*, the Fifth Circuit made clear that in Louisiana, a district attorney is not entitled to Eleventh Amendment Immunity afforded to the State.  Instead, the district attorney is a functionary of the local parish government, whose liability is to be addressed under *Monell*, discussed *infra*.  *Id.*

or damage upon the plaintiff.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A plaintiff would have to allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury or damage.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds, Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

Muller, however, has not asserted that Reed's decision not to pursue charges against the Winthers or that the alleged errors in the prosecution of his case were the result of an unconstitutional policy or custom of St. Tammany Parish as contemplated by *Monell*.  Thus, Muller's § 1983 claims, if any, against Reed in his official capacity are frivolous.

Having resolved that Reed and any § 1983 claims against him should be dismissed as frivolous, the Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 20) filed by Reed should be denied or dismissed as moot.

### 5.  St. Tammany Parish and the St. Tammany Parish School Board

Muller included St. Tammany Parish and the St. Tammany Parish School Board as defendants in the caption of his complaint and in the list of defendants in the first paragraph of the complaint.  However, he has not stated any allegation against the Parish or the Board or any basis for having included them as defendants.

Both the Parish and the Board, as a local governing bodies, are each a "person" within the meaning of § 1983 and therefore are subject to suit under that provision.  *Monell*, 436 U.S. at 694.  However, a governmental body may not be held vicariously liable for the actions of its employees; rather, it can be liable only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible."  *Monell*, 436 U.S. at 694.  As noted above,

the plaintiff must allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury. *See Collins*, 503 U.S. at 122-24; *Berry*, 670 F.2d at 33-34.

In the instant case, Muller has not alleged any basis for having named the Parish or the Board in his complaint. He has not identified a Parish or Board policy, practice, or custom which caused the damages he asserts in the manner contemplated *Monell*. Instead, his claims are based generally on the actions or inactions of other individuals. Consequently, the claims against St. Tammany Parish and the St. Tammany Parish School Board should be dismissed as frivolous and for failure to state a claim for which relief may be granted pursuant to § 1915(e).

Having resolved that St. Tammany Parish and the St. Tammany Parish School Board, and any § 1983 claims against them, should be dismissed as frivolous, the Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 19) filed by St. Tammany Parish and the Rule 12(b)(6) Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement Pursuant to FRCP 12(e) (Rec. Doc. No. 13), should be denied or dismissed as moot.

### B.     Malicious Prosecution Claims

Muller appears to allege that the defendants, as a group, had no right to pursue criminal proceedings against him. To the extent Muller is asserting a malicious prosecution claim, such a claim is not cognizable under § 1983. This court has held that the federal Constitution does not include a "freestanding" right to be free from malicious prosecution. *See Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (*en banc*), *cert. denied*, 543 U.S. 808 (2004). Instead, a plaintiff must show that the state officials violated specific constitutional rights in connection with a "malicious prosecution." For example, "the initiation of criminal charges without probable cause may set in force events that run afoul of the . . . Fourth Amendment if the accused is seized and

arrested . . . or other constitutionally secured rights if a case is further pursued." *Id.* at 953-54. In such a case, the claim is considered under the Fourth Amendment, not malicious prosecution. *Id.* at 954. Accordingly, Muller's claims, if any, under § 1983 for "malicious prosecution" must be dismissed as frivolous.

C. **Application of the *Heck* Doctrine to Claims against Mire Schenck, and Oster**

The gravamen of plaintiff's complaint is that Mire, Schenck, and Oster falsified police reports and affidavits and illegally searched his vehicle and residence to obtain evidence used to prosecute him. These claims are barred from review at this time.

A plaintiff may not maintain a civil rights action based on the legality of a prior criminal proceeding unless a state court or federal habeas court has determined that the conviction is in fact invalid, overturned or reversed. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The critical inquiry is whether a judgment in this case in favor of the plaintiff would "necessarily imply the invalidity of his conviction or sentence." *Id.* If so, the claim is barred unless the conviction has been reversed or declared invalid in one of the ways enumerated in *Heck*. *Id.*; *Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir.), *cert. denied*, 531 U.S. 959 (2000). A claim of illegal search and seizure implicates the validity of a criminal conviction where the conviction is based on evidence discovered during that search or the resultant arrest. *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996).

The same is true of a claim alleging that a conviction was based on false reports or testimony, like the claims asserted by Muller. He is therefore precluded from maintaining a civil rights action under § 1983. *See*, *e.g.*, *Castellano*, 352 F.3d at 959-60 (civil rights claim based on manufactured evidence and perjured testimony does not accrue until state court invalidates the

18

underlying criminal action); *see also Gilkey v. Graves*, No. 3-03-CV-0497-G, 2003 WL 21653858, at *1-2 (N.D. Tex. Apr. 9, 2003) (barring, under *Heck*, claims against judge and others for conspiring to violate plaintiff's civil rights before and during criminal trial).

Muller's conviction stems from the evidence of a badge and other items discovered during the search made the basis of this suit. *See Sneed v. Dixon*, No. 3:06-CV-59-M (BH), 2007 WL 1202243, at *7 (N.D. Tex. Apr. 23, 2007) ("If Defendant were found to have conducted an illegal search and seizure on March 5, 2005, the evidentiary basis, and thus the validity, of Plaintiff's conviction for possession of a controlled substance would be called into doubt.") (Order adopting Report); *Porter v. Richardson*, 2:04-CV-0321, 2006 WL 740992 (N.D. Tex. 2006 Mar. 13, 2006) ("it appears plaintiff has been convicted of one or more charges stemming from the incident forming the basis of his complaint and that a favorable determination on plaintiff's claims of illegal search and seizure would cast into doubt his conviction . . . .") (Report and Recommendation). Because Muller's illegal search and seizure and false police report claims imply the invalidity of his conviction, he cannot maintain a civil rights action unless and until his conviction is found to be invalid. Neither of those circumstances have occurred.

For these reasons, Muller's § 1983 claims against Mire, Schenck, and Oster for illegal search and seizure and falsifying police reports and affidavits, are barred under *Heck* and must be dismissed with prejudice as frivolous until such time as the *Heck* conditions are met.[9] *See Johnson v. McElveen*, 101 F.3d 423 (5th Cir. 1996).

Having resolved that Mire, Schenck, and Oster and any § 1983 claims against each of them should be dismissed as frivolous, the Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 30) filed by

---

[9]The same would be true of the false police report claims urged against the Winthers, should a reviewing court find the Winthers to be appropriate defendants under § 1983.

Jason Mire, Keith Schenck, Mark Oster, and the St. Tammany Parish Sheriff's Office should be denied or dismissed as moot as to these defendants.

## IV.    State Law Claims

It is unclear from Muller's conclusory allegations as to whether he has asserted claims under Louisiana state law.  However, in his complaint he states that the "[d]amages sought are irreparable due to the boldness of the defendants to ignore the State and Federal laws."  Affording Muller the benefit of broad construction due pro se plaintiffs, a reviewing Court may consider this sufficient to invoke relief under state law as well as the federal claims already addressed.

 To the extent Muller intended to invoke this Court's supplemental jurisdiction under 28 U.S.C. § 1367, his state law claims should be dismissed.  The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial."  *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *accord Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").  The Court is recommending that Muller's federal claims under § 1983 be dismissed in their entirety.  Therefore, his state law claims, if any, should be dismissed without prejudice as the Court declines to exercise its supplemental jurisdiction.

## V.    Recommendation

It is therefore **RECOMMENDED** that Muller's § 1983 claims against the defendants, St. Tammany Parish, St. Tammany Parish Sheriff's Office, St. Tammany Parish School Board, District

Attorney Walter Reed, Northshore High School, James Scott Winther (Sr.), James Scott Winther, Jr., and Shannon Michelle Winther, be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which relief may be granted, and/or for seeking relief against an immune defendant, pursuant to 28 U.S.C. § 1915(e)(2)(b).

It is further **RECOMMENDED** that Muller's § 1983 claim of malicious prosecution be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e)(2)(b).

It is further **RECOMMENDED** that Muller's § 1983 claims against the Jason M. Mire, Keith J. Schenck, and Mark Oster for illegal search and seizure and falsifying police reports and affidavits, be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to § 1915(e)(2)(b), until such time as the *Heck* conditions are met.

It is further **RECOMMENDED** that the **Rule 12(b)(6) Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement Pursuant to FRCP Rule 12(e) (Rec. Doc. No. 13)** filed by the St. Tammany Parish School Board; the **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 19)** filed by St. Tammany Parish; **Rule 12(b)(6) Motion to Dismiss (Rec. Doc. No. 20)** filed by St. Tammany Parish District Attorney Walter Reed; the **Motion to Dismiss (Rec. Doc. No. 30)** filed by Jason Mire, Keith Schenck, Mark Oster, and the St. Tammany Parish Sheriff's Office; and the **Motion to Dismiss (Rec. Doc. No. 35)** filed by James Scott Winther (Sr.), Shannon Michelle Winther, and James Scott Winther, Jr. be **DISMISSED as moot**.

It is further **RECOMMENDED** that Muller's claims, if any, raised under Louisiana law, against the defendants, St. Tammany Parish, St. Tammany Parish Sheriff's Office, St. Tammany

Parish School Board, District Attorney Walter Reed, Northshore High School, James Scott Winther (Sr.), James Scott Winther, Jr., Shannon Michelle Winther, Jason M. Mire, Keith J. Schenck, and Mark Oster, be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise its supplemental jurisdiction.

New Orleans, Louisiana, this 28th day of April, 2010.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**